IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| LEMIRE SCHMEGLAR | ) | Judge Jack Schmetterer |
| | ) | |
|    Debtor | ) | Case No. 12-42283 |
| _____ | ) | |
| | ) | |
| LEMIRE SCHMEGLAR | ) | |
|                Plaintiff, | ) | |
| | ) | |
|      v. | ) | Adversary No. 14-00121 |
| | ) | |
| PHM FINANCIAL, INC. d/b/a PHM | ) | |
| FINANCIAL SERVICES, DLJ MORTGAGE | ) | |
| CAPITAL, INC. MORTGAGE | ) | |
| ELECTRONIC REGISTRATION SYSTEMS, | ) | |
| INC. US BANK N.A. as TRUSTEE | ) | |
| for CREDIT SUISSE FIRST BOSTON | ) | |
| ARMT 2005-5, U.S. BANK AS TRUSTEE | ) | |
| FOR ADJUSTABLE RATE MORTGAGE | ) | |
| 2005-5, ADJUSTABLE RATE MORTGAGE | ) | |
| BACKED PASS THROUGH | ) | |
| CERTIFICATES, SERIES 2005-5, | ) | |
| WELLS FARGO, CREDIT SUISSE FIRST | ) | |
| BOSTON MORTGAGE SECURITIES CORP, | ) | |
| ADJUSTABLE RATE MORTGAGE 2005-5 | ) | |
|                Defendant. | ) | |

## AMENDED COMPLAINT

NOW COMES the Plaintiff, LEMIRE SCHMEGLAR, ("SCHMEGLAR" or "Debtor"), by and through his attorneys, and for his Amended Complaint against Defendants PHM FINANCIAL, INC. ("PHM"), DLJ MORTGAGE CAPITAL, INC. ("DLJ")MORTGAGE ELECTRONIC REGISTRATION SYSTEMS ("MERS"), US BANK N.A. as TRUSTEE for CREDIT SUISSE FIRST BOSTON ARMT 2005-5 ("ARMT 2005-5"), U.S. BANK AS TRUSTEE FOR ADJUSTABLE RATE MORTGAGE 2005-5, ADJUSTABLE RATE MORTGAGE BACKED PASS THROUGH CERTIFICATES, SERIES 2005-5, WELLS

1

FARGO, CREDIT SUISSE FIRST BOSTON MORTGAGE SECURITIES CORPORATION, ADJUSTABLE RATE MORTGAGE 2005-5, and ADJUSTABLE RATE MORTGAGE TRUST 2005-5 (collectively referred to as "Defendants"), pursuant to Bankruptcy Rule 7001(2), SCHMEGLAR states as follows:

## JURISDICTION and CHOICE OF LAW

1. The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.

2. The subject matter of this complaint is a core proceeding under 28 U.S.C. § 157(a) and (b)(2)(B), (C), (H), and (K).

3. The facts and law related to the securitization of the mortgage and the trust are governed by New York law.

## FACTS

### A. *Background on 2715 North Paulina*

4. Schmeglar is the owner of real estate commonly known as 2715 North Paulina, Chicago, Illinois 60657 (hereinafter, "Property").

5. In order to finance the original mortgage on the property, Schmeglar took out a loan and PHM Financial, Inc., d/b/a PHM Financial Services, d/b/a Professional Home Mortgage (hereinafter referred to as "PHM") was the originator of the Mortgage in the Property and Note.

6. At the closing on the Property, Schmeglar's loan was transferred to Mortgage Electronic Registration Service, Inc. ("MERS") as the "nominee" for the lender, PHM. *See Exhibit A, Mortgage.*

### B. *PHM, MERS, ARMT 2005-5, Adjustable Rate Mortgage-Backed Pass-Through Certificates, Series 2005-5*

7. MERS, as nominee, had all rights to buy and sell the Mortgage and Note pursuant to federal and state law and so long as the transfer conformed to internal operating procedures of MERS and PHM. *See, Exhibit B, Assignment*

8. MERS Internal Procedures Manual forbid MERS from transferring the ownership of the Mortgage and Note as an "agent or nominee" without written authorization from the owner of the Mortgage and Note. *See*, *Exhibit C, at page 79*. Therefore, MERS did not have the authority to sell, transfer, assign, or otherwise transfer the Mortgage and Note without written authority from PHM. Upon information and belief, PHM never granted MERS written authorization to transfer the Mortgage and/or Note to any third-party purchaser.

9. The sole evidence of any such authority to transfer the Mortgage and Note is in the form of an undated *allonge* that is not properly executed. *See Exhibit B.*

10. Any transfer of the Mortgage and Note after the date of the undated *allonge* is invalid because any transferring party does not have the authority to make such a transfer.

11. MERS's records show that it purportedly transferred the Mortgage into ARMT 2005-5, Adjustable Rate Mortgage Back Pass Through Certificates Series 2005-5 on September 7, 2011. *See Exhibit D*.

12. ARMT 2005-5, Adjustable Rate Mortgage Back Pass Through Certificates Series 2005-5 is not a legal entity nor is it a Trust.

3

C. *Adjustable Rate Mortgage Trust 2005-5*

13.    Adjustable Rate Mortgage Trust 2005-5 ("ARMT 2005-5") requires that:

\*            \*            \*

SECTION 2.01                Conveyance of Trust Fund.

(b)    In connection with the transfer and assignment set forth in clause (a) above, the depositor has delivered or caused to be delivered to a Custodian for the benefit of the Certificateholders, the documents and instruments with respect to each Initial Mortgage Loan as assigned:

(i)    (A) the original Mortgage Note bearing all intervening endorsements and including any riders to the Mortgage endorsements and including any riders to the Mortgage Note, endorsed "Pay to the order of _____, without recourse" and signed in the name of the last named endorsee by an authorized officer . . .

(ii)    The original guarantee executed in connection with the Mortgage Note (if any). . .

\*        \*        \*

(iv)        the originals of all assumption, modification, consolidation or extension agreements, (or, if an original of any of these documents has not been returned from the recording office, a copy thereof certified by or on behalf of the Seller, the original to be delivered to the Seller, the original to be delivered to the Seller forthwith after return from such recording office) with evidence of recording thereon, if any. . .

*See Exhibit E, at § 2.01 (page 77)*

4

14. When the transfer of the Note (and not the Mortgage) purportedly occurred between MERS and the Trust, MERS acted solely in its capacity as nominee. ***Exhibit D.***

15. Upon information and belief, MERS attempted to transfer its purported interest in the Mortgage to ARMT 2005-5 on September 7, 2011.

16. Before the purported transfer occurred on September 7, 2011, the Mortgage and Note had been transferred a number of times without intervening signatures.

17. ARMT 2005-5 requires that the chain of title for the Mortgage and Note must be provided to the Trust within 90-days of the Closing Date. See ***Exhibit E at § 2.01(b)(viii) (page 84 as uploaded).***

18. Schmeglar's Mortgage and Note was separated in 2005 and the Note and Mortgage do not have an identical chain of title, and the chain of title cannot be determined without further investigation of the Trust documents, service level reports, and MERS file.

19. Pursuant to its trust documents, ARMT 2005-5 is a Real Estate Mortgage Investment Conduit ("REMIC") and is a Special Purpose Vehicle ("SPV"). ***See Exhibit E at page 1 (page 7 as uploaded).***

20. ARMT 2005-5 was formed pursuant to the laws of the state of New York, and is at all times governed by the provisions of New York trust law. ***See Exhibit E, PSA at § 12.03 at page 187 (page 194 as uploaded).***

21. As a REMIC, ARMT 2005-5 tax status is governed by § 860D of Title 26 of the United States Code.

22. To take advantage of the tax benefits of a REMIC, the trust must strictly comply with the provisions of 26 U.S.C. § 860D.

23. If a REMIC trust does not strictly adhere to 26 U.S.C. § 860D, and any of the mortgages or notes enter into the REMIC trust in it destroys the benefits of the REMIC and all distributions to the certificate holders become immediately taxable.

5

24.   The ARMT 2005-5 Trust provides that "following the Startup Day, none of any Servicer, the Trustee. . . or the Trust Administrator shall accept any contributions of assets to any REMIC created hereunder unless such Servicer, the Trustee, or the Trust Administrator shall have received an Opinion of Counsel. . . to the effect that the inclusion of such assets in a REMIC will not cause the REMIC to fail to qualify as a REMIC at any time that any Certificates, are outstanding, or subject that REMIC to any tax under the REMIC Provisions or other applicable provisions of federal, state and local law or ordinances." *See Exhibit E at § 2.07 generally but quoted from §2.07(i) (uploaded at page 97)*

25.   The "Startup Day" for ARMT 2005-5 is the "Closing Date", or May 27, 2005. *See Exhibit E, page 70 for definition of "Startup Day" (page 76 as uploaded) and page 25 for definition of "Closing Date" ((page 31 as uploaded)*.

26.   Schmeglar's Mortgage and Note purportedly entered ARMT 2005-5 on September 7, 2011, well after the "Closing Date".

27.   Upon information and belief, no Opinion of Counsel or other documents required by ARMT 2005-5 were ever prepared.

28.   Pursuant to New York Trust Law a trustee must complete all transfers of assets into a trust within 90-days of the Closing Date. *Matter of Szabo*, 10 N.Y.2d 94, 98-99 (1961).

29.   Pursuant to the terms of the documents that govern ARMT 2005-5, the Closing Date occurred in 2005. After the Closing Date, no asset conveyances may enter ARMT 2005-5. *See Exhibit E at § 2.02 and Exhibit E at page 25 (page 31 as uploaded); See Wells*

6

*Fargo Bank N.A. v. Erobobo,* et al., 2013 WL 1831799; 39 Misc.3d 1220(A) (N.Y. Sup. Ct. April 29, 2013).

30. The Mortgage cannot have been transferred into ARMT 2005-5 in September of 2011 because the transfer could not have occurred 6 years after the Closing Date per the trust documents and New York trust law. ***See Exhibit E at § 2.01 – 2.03;*** *also see* N.Y. Est. Powers & Trusts Law § 7-2.4.

31. If such an assignment was made it would be a void transaction. *Id.; Wells Fargo Bank N.A. v. Erobobo,* et al., 2013 WL 1831799; 39 Misc.3d 1220(A) (N.Y. Sup. Ct. April 29, 2013); *Saldivar v. JP Morgan Chase Bank, N.A.,* (*In re Saldivar*); 2013 WL 2452699 (Bankr. Ct. S.D. Texas June 5, 2013).

32. Further, if the transfer was made after the Closing Date it would have destroyed the Trust's "pass-through status" pursuant to the Internal Revenue Code. *See,* 26 U.S.C. § 860D(a)(4).

33. Likewise, if a transfer occurs after the Closing Date it destroys the tax status of ARMT 2005-5. *See,* 26 U.S.C. § 860D.

34. The Closing Date for ARMT 2005-5 was May 27, 2005. ***See Exhibit E at page 25 (page 31 as uploaded)***.

35. There is no record of the Note being transferred into ARMT 2005-5, and it cannot be re-attached through adhesion. *Kemp v. Countrywide Home Loans, Inc., (In re Kemp)*, 440 B.R. 624 (Bankr. D. N.J. 2010).

36. ARMT 2005-5 never received a properly assigned mortgage and promissory note.

37. ARMT 2005-5 cannot have a valid lien against the subject property.

D. <u>**Wells Fargo, American Servicing Corporation, Credit Suisse First Boston Mortgage Securities Corp., and U.S. Bank**</u>

38. Wells Fargo is listed as the servicer pursuant to the Pooling Agreement. *See Exhibit E.*

39. MERS lists Wells Fargo as both the servicer and investor. *Exhibit H*

40. America's Servicing Company ("ASC") is a division of Wells Fargo Bank.

41. On a number of occasions Wells Fargo, by and through America's Servicing Company ("ASC"), provided documents to Schmeglar representing that it is the servicer for the Mortgage and Note that is held by a division of U.S. Bank. *See Exhibit F.*

42. ASC continues to send correspondence with conflicting information stating that different parties are the owner/investor of the Mortgage and Note.

43. On December 13, 2010, the Plaintiff received correspondence stating that the Mortgage and Note does "not [have] a specific investor. . . as there are multiple investors. The pool of loans is managed by U.S. Bank, N.A." *See Exhibit F*

44. The December 13, 2010, correspondence also stated that the name of the mortgagor is "ARMT 2005-5/PMSR." *See Exhibit F.*

45. On June 11, 2011, Schmeglar received a loan modification agreement from ASC which asserted that Wells Fargo is the lender. *See Exhibit F*

46. On March 12, 2013, Schmeglar received correspondence from ASC stating that the investor/mortgagor was U.S. Bank, N.A. ARMT 2005-5. *See Exhibit F*

47. On September 26, 2012, the Circuit Court of Cook County entered a judgment against the Property. The party that received a judgment was named "US Bank National Association, as Trustee for Credit Suisse First Boston ARMT 2005-5." *See Exhibit G.*

48. Upon information and belief, US Bank National Association, as Trustee for Credit Suisse First Boston ARMT 2005-5 is not a legal entity.

49. There is no listing of any entity ever being named US Bank National Association, as Trustee for Credit Suisse First Boston ARMT 2005-5 and the trust that MERS purportedly sold the Mortgage and Note to is not named US Bank National Association, as Trustee for Credit Suisse First Boston ARMT 2005-5.

50. In this proceeding a proof of claim was filed in the name of "US Bank National Association as Trustee for Adjustable Rate Mortgage Trust 2005-5, Adjustable Rate Mortgage Backed Pass Through Certificates, Series 2005-5."

51. The proof of claim alleged that US Bank National Association as Trustee for Adjustable Rate Mortgage Trust 2005-5, Adjustable Rate Mortgage Backed Pass Through Certificates, Series 2005-5 was the rightful lienholder. *See Case No. 12-42283, Claim No 17-1.*

52. Schmeglar has learned that Credit Suisse First Boston Mortgage Backed Securities Corp. is likely the lienholder because it was the last party that properly held the mortgage. *See Exhibit I.*

53. On February 10, 2014, Schmeglar received a letter from U.S. Bank, N.A. stating that "U.S. Bank is merely a trustee for the Trust that owns [the] [M]ortgage and [N]ote." And that *only* Wells Fargo has authority to enforce the terms of the Mortgage and Note. *See Exhibit J.*

54. In all, more than five entities have claimed an ownership or interest in the Mortgage and/or Note since 2010. However, none have shown the requisite chain of title.

55. Plaintiff is unable to determine which party is the owner of the Mortgage and Note due to the conflicting representations by Wells Fargo Bank, ASC, its agents, and its attorneys. *See Exhibit F – J.* Schmeglar is also unable to determine the proper party due to the inconsistencies related to the purported transfer into ARMT 2005-5. The Plaintiff seeks

9

to pay the mortgagee and holder of the Note, but is unable to determine the proper party to pay.

## COUNT I
## INTERPLEADER

**WHEREFORE,** Schmeglar requests and prays for judgment against the Defendants in Interpleader and each of them as follows:

56. That the Defendants in Interpleader and each of them be required to interplead and litigate among themselves their claims to the mortgage and note;

57. That the Court determine and enter an order setting forth the proper recipients of the mortgage payments;

58. That Debtor be allowed to present evidence as to the proper party it believes is the lienholder;

59. For such other relief deemed just and appropriate.

  Dated: March 19, 2014        Respectfully submitted,
                 LeMire Schmeglar

                 By: /s/ Michael V. Ohlman
                   One of his attorneys

Michael V. Ohlman #6294512
MICHAEL V. OHLMAN, P.C.
308 West Erie, Suite 300
Chicago, Illinois 60654
(312)759-0200 phone
(312)276-8801 fax
mvohlman@ohlmanlaw.com