United States Bankruptcy Court
Northern District of Illinois
Eastern Division

| | |
|---|---|
| In re:<br><br>Lemire Schmeglar,<br><br>　　　　　　　　　　　　Debtor. | |
| Lemire Schmeglar,<br><br>　　　　　　　　Interpleader Plaintiff<br><br>　　　v.<br><br>PHM Financial, Inc. d/b/a PHM Financial Services,<br><br>DLJ Mortgage Capital Inc.,<br><br>Mortgage Electronic Registration Systems, Inc.,<br><br>U.S. Bank N.A. as Trustee for Credit Suisse First Boston ARMT 2005-5,<br><br>U.S. Bank N.A. as Trustee for Adjustable Rate Mortgage 2005-5, Adjustable Rate Mortgage Backed Pass Through Certificates, Series 2005-5,<br><br>Wells Fargo Bank, N.A.,<br><br>Credit Suisse First Boston Mortgage Securities Corp., Adjustable Rate Mortgage 2005-5,<br><br>　　　　　　　Interpleader Defendants. | Bankruptcy No. 12-bk-42283<br><br>Chapter 11<br><br>Adversary No. 14-ap-121 |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Lemire Schmeglar, ("Schmeglar") owns a home located at 2715 N. Paulina in Chicago, IL. On October 24th, after a state court judgment of foreclosure in favor of Plaintiff in that case (US Bank National Association v. Schmeglar et. al., Circuit Court of Cook County, Illinois, 11 CH 34711), but before a foreclosure sale took place, Debtor filed for bankruptcy relief under Chapter 11. A plan of reorganization ("Plan") was confirmed on July 8, 2013, and an order was entered granting a final decree on March 21, 2014. The Plan provided that Schmeglar would not pay US Bank on its asserted first mortgage until after the validity of its lien was finally adjudicated. The bank did not object to the plan which was confirmed.

Schmeglar filed this interpleader as an adversary proceeding under Rule 7022, F.R. Bankr. P., to determine what party is entitled to payment among parties named by the debtor-plaintiff. The Complaint asserted that many entities claimed ownership of the mortgage interest and demanded payment of the mortgage. Pursuant to an earlier order, Schmeglar is depositing mortgage payments into escrow pending that determination. (Dkt. 20.) U.S. Bank N.A., as Trustee for Adjustable Rate Mortgage Trust 2005-5, Adjustable Rate Mortgage Backed Pass Through Certificates, Series 2005-5 ("US Bank as Trustee"), Wells Fargo Bank, N.A., ("Wells Fargo"), Credit Suisse First Boston Mortgage Securities Corp., Adjustable Rate Mortgage 2005-5, and Mortgage Electronic Registration Systems, Inc. ("MERS") (collectively, the "Appearing Defendants") appeared through counsel and answered the complaint. The other named defendants did not appear, and it is found by separate order that they were not properly served with summons and thus have been dismissed.

Previously, Appearing Defendants moved for judgment on the pleadings under Rule 12(c), F.R. Civ. P., [as incorporated by F.R. Bankr. P. 7012]. That motion was denied (Dkts. No. 80, 82), and the adversary proceeding was set for trial. The issue as to what party has possession of the original signed note was the essential issue under Illinois law cited in the Opinion denying the motion.

Trial was held and the parties rested. After trial, the parties submitted final arguments in writing.

The Court now makes and enters the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

1. In 2005, the Debtor-Plaintiff Lemire Schmeglar obtained a mortgage loan from PHM Financial, Inc. ("PHM") in the amount of $875,000, evidenced by a note ("Note")

2

and mortgage ("Mortgage") on his primary residence located at 2715 North Paulina, Chicago, Illinois.

2. In his amended complaint herein, Schmeglar alleged that, "In all, more than five entities have claimed an ownership or interest in the Mortgage and/or Note since 2010." (¶ 54.)

3. Further, Schmeglar alleged in this proceeding that it is necessary "to determine which party is the owner of the Mortgage and Note due to the conflicting representations by Wells Fargo Bank, ASC, its agents, and its attorneys." (¶ 55.)

4. The original Note was presented at trial, and the Note and Mortgage contain Schmeglar's original signature. It is found that PHM indorsed the Note "in blank" by executing an allonge which is affixed to the Note. The original Note is in the custody of Defendants' counsel, who has custody on behalf US Bank, who in turn possesses the Note as trustee of the Trust.

5. Pursuant to the Pooling and Servicing Agreement (dated as of May 1, 2005) ("PSA") that created the Trust, the "depositor" is Credit Suisse First Boston Mortgage Securities Corp, the trustee is U.S. Bank, N.A. ("U.S. Bank"), Wells Fargo acts as both the "master servicer" and also the "servicer" of Schmeglar's loan. Pursuant to the PSA, Schmeglar's Note, indorsed in blank, was transferred to US Bank as trustee for the Trust.

6. Under the PSA, Wells Fargo is empowered to collect payment on mortgage loans that it services.

7. Pursuant to terms of the PSA, Wells Fargo, as master servicer and servicer, has been advancing payments to US Bank in the amounts owed by Schmeglar. As discussed below, these payments do not affect Schmeglar's liability to make payments.

8. Persons and entities also refer to the Trust by other names, such as the "Adjustable Rate Mortgage Trust 2005-5, Adjustable Rate Mortgage-Backed Pass Through Certificates, Series 2005-5," "CSFB Adjustable Rate Mortgage Trust 2005-5,"

and "Credit Suisse First Boston ARMT 2005-5," and those names all refer to the same Trust. The PSA itself refers to the Trust in different ways. For example, PSA § 2.01 refers to, "the Adjustable Rate Mortgage Trust 2005-5" (the 'Trust')." PSA Ex. T refers to, "Adjustable Rate Mortgage Trust 2005-5, Adjustable R ate Mortgage-Backed Pass-Through Certificates, Series 2005-5 (the 'Trust')." PSA § 3.06 refers to "Wells Fargo Bank, N.A., as Servicer for Adjustable Rate Mortgage Trust 2005-5, Adjustable Rate Mortgage-Backed Pass Through Certificates, Series 2005-5." PSA Ex. R provides "in relation to the Credit Suisse First Boston Mortgage Securities Corp., Adjustable Rate Mortgage Trust 2005-5, Adjustable Rate Mortgage-Backed Pass-Through Certificates, Series 2005-5." However, as discussed in the Conclusions of Law below, none of these name references affect Schmeglar's liability.

9. Schmeglar's confirmed Plan provided as to US Bank that "Debtor disputes that U.S. Bank N.A. has a valid mortgage and note, and is seeking to challenge the priority, extent, and validity of its lien. The Debtor will not be disbursing any dividends or payments to U.S. Bank, N.A. until the validity and priority of the lien has been fully adjudicated." (12-bk-42283 Dkt. 90 at § 3.01)

10. Even though Schmeglar had the opportunity to testify and offer other evidence that he had received conflicting or confusing demands for payment, he did not take the stand, and offered no evidence of his supposed confusion as to whom he should pay, or evidence of conflicting demands upon him for payment.

11. All further factual matters set forth in the Conclusions of Law will stand as additional Findings of Fact.

## CONCLUSIONS OF LAW

### JURISDICTION

Jurisdiction for this adversary proceeding is provided by 28 U.S.C. § 1334. The matter is referred here by Internal Procedure 15(a) of the District Court for the Northern

4

District of Illinois. This adversary proceeding seeks to determine the nature and extent of a lien and is therefore core under 28 U.S.C. § 157(b)(2)(K). Under terms of the confirmed Chapter 11 Plan, the party entitled to payment on the mortgage note must be determined before the reorganized debtor is to make payments on the note. Therefore, this matter "stems from the bankruptcy itself," and may constitutionally be decided by a bankruptcy judge. *Stern v. Marshall*, 131 S.Ct. 2594, 2618 (2011).

### THE HOLDER OF THE NOTE IS ENTITLED TO PAYMENT

Evidence showed and it is held that US Bank possesses the original Note on behalf of the Trust. There was no evidence to the contrary. Under the Illinois Uniform Commercial Code, a person in possession of a promissory note payable to bearer is deemed the "holder" of the instrument. 810 ILCS 5/1-201(b)(21). A holder is entitled to enforce a mortgage instrument. 810 ILCS 5/3-301. Here, the evidence showed that Schmeglar signed the Note, and that Note was then endorsed in blank. Accordingly, US Bank is the holder of the note, and is entitled to enforce it and mortgage rights related to it, and to receive payments and collect the debt from Schmeglar under terms of the Note and Mortgage on behalf of the Trust. Wells Fargo, as servicer, is entitled to collect payments from Schmeglar on behalf of US Bank.

The other named defendants were not properly served with summons by Schmeglar, and did not appear. They will each be dismissed without prejudice by separate order.

### THE EFFECT OF WELLS FARGO'S PAYMENTS TO US BANK

In pursuing discovery, Schmeglar found out that Wells Fargo had advanced payments to US Bank in the amount of his mortgage payment. Schmeglar contends, because Wells Fargo made advances to the Trust pursuant to the PSA when Schmeglar was not making his mortgage payments, that Schmeglar's Loan is not and was never in default and Schmeglar is excused from making his mortgage payments that became due during the periods of those advances. In effect he asserts that his home ownership is

5

mortgage free for any period when Wells Fargo did or ever will advance such payments.

Other courts have been unanimous in rejecting that contention. See, e.g., *In re Rivera*, No. 14-54193, 2015 WL 1515572, at *5-6 (Bankr. N.D. Cal. Mar. 30, 2015); *Pulliam v. PennyMac Mortg. Investment Trust Holding I LLC*, No. 2:13-CV-456-JDL, 2014 WL 3784238, at *3-4 (D. Me. July 31, 2014); *Ouch v. Federal National Mortg.Ass'n*, No. 11-12090-RWZ, 2013 WL 139765, at *3-4 (D. Mass. Jan. 10, 2013); *Casault v. Federal National Mortg. Ass'n*, 915 F. Supp. 2d 1113, 1132-36 (C.D. Cal 2012).

As those courts have recognized, Schmeglar's argument fails for a number of reasons. First, Wells Fargo's advances were not made on behalf of or for the benefit of Schmeglar; instead the advances were made pursuant to Wells Fargo's separate contractual obligations under the PSA. (See PSA § 5.01.) Schmeglar is not a party to or beneficiary of the PSA; the PSA was created for the benefit of the "Certificateholders," not for the benefit of Schmeglar, (see PSA at 10, §§ 3.01, 3.03). See *Pulliam*, 2014 WL 3784238, at *4; *Ouch*, 2013 WL 139765, at *3; *Casault*, 915 F. Supp. 2d at 1135.

Second, Wells Fargo's advances are required under the PSA to be reimbursed to it, (see PSA §§ 3.01, 3.08, 3.11(e), 5.01); in fact, Wells Fargo is only required to make the advances to the extent they are anticipated to be recoverable from future payments, foreclosure proceeds, or other proceeds or collections, (see PSA § 5.01). Thus, because Wells Fargo's advances are reimbursable, Schmeglar's debt to the Trust is not satisfied by those advances. See *Casault*, 915 F. Supp. 2d at 1135.

Third, the PSA expressly authorizes Wells Fargo to initiate a foreclosure against Schmeglar when he has failed to make his mortgage payments or is otherwise in default, (see PSA §§ 3.01, 3.11). Thus, because the PSA authorizes a foreclosure against Schmeglar even when Wells Fargo is making advances to the Trust for Schmeglar's delinquent mortgage payments, those advances cannot be seen as being made for the benefit of Schmeglar or on his behalf. See *In re Rivera*, 2015 WL 1515572, at *6.

Finally, contrary to Schmeglar's contention that he was and is not in default, the Note clearly defines "default" as his failure to make his mortgage payments when due, (Note ¶ 7(B)), which Schmeglar admits he has failed to do, *See Casault*, 915 F. Supp. 2d at 1136. (holding that the payments made by a servicer are not "on behalf" of the borrower.)

Accordingly, it is held and found that Wells Fargo's advances did not satisfy Schmeglar's repayment obligations under the Note and Mortgage, that Wells Fargo's advances do not excuse Schmeglar from making any of his mortgage payments during the period of those advances or otherwise, and that Schmeglar is in default under the terms of the Note and Mortgage by his admitted failure to make timely mortgage payments.

### THE DIFFERENT NAMES OF THE TRUST DO NOT AFFECT DEBTOR'S OBLIGATIONS

Schmeglar argues that the fact that the Trust is known by many names puts him at risk for multiple liability. He offered no evidence of any such risk.

Under its terms, the Pooling and Servicing Agreement, (the "PSA" at Defendant's Exh. 5), is subject to New York law. (PSA § 12.03.)

The trust here is created by a conveyance to the Trustee, "The Depositor does hereby establish [the Trust] and sells, transfers, assigns, delivers, sets over and otherwise conveys to the Trustee in trust for the benefit Certificateholders, without recourse, the Depositor's right, title and interest in ..." (PSA § 2.01(a).) Under New York state law, only the trustee may sue under the rights embodied in trust property. "Except as otherwise provided in this article, an express trust vests in the trustee the legal estate, subject only to the execution of the trust, and the beneficiary does not take any legal estate in the property but may enforce the trust." N.Y. Est. Powers & Trusts Law § 7-2.1(a) (McKinney).

Trusts lack capacity to sue except to enforce the trust against the trustee, "as the statute vests the legal estate of an express trust in the trustees." *Ronald Henry Land Trust v. Sasmor*, 44 Misc. 3d 51, 52 (S.Ct., Appellate Term, 2d Div. 2014). This is consistent with the Restatement definition, that, "A trust ... is a fiduciary relationship with respect to property, subjecting the person by whom the title to the property is held to equitable duties to deal with the property for the benefit of another person, which arises as a result of a manifestation of an intention to create it." Restatement (Second) of Trusts § 2 (1959); *see generally Presta v. Tepper*, 179 Cal. App. 4th 909, 914 (4th Dist. 2009) (explaining that unless some other law allows otherwise, "a trust itself can neither sue nor be sued in its own name. Instead, the real party in interest in litigation involving a trust is always the trustee.").

Under New York state law, investment trusts, such as the one created by the PSA, may hold property in their own name, but that other powers, such as the power to sue, are vested in the trustee. N.Y. Est. Powers & Trusts Law § 7-2.1 (McKinney) (the Practice Commentaries by Margaret Valentine Turano provides, "The legislature wanted to make these trusts parallel to partnerships, which can hold property in the partnership name, so it enacted subparagraph (c) by L.1973, ch. 1031, § 1, to permit these trusts to acquire property in the name of the trust.") That is, a trust cannot sue or take any other action except through a trustee. By contrast, US Bank, as a national banking association, is empowered by statute to sue or be sued "as fully as natural persons." 12 U.S.C. § 24.

Accordingly, Schmeglar derives neither obligation nor rights that flow from different names for the trust. The use of different names for the Trust have not changed the identity of the trustee. US Bank is due what he owes because it is the trustee. Unlike a trust which lacks the capacity to sue under New York law, US Bank can sue to collect or foreclose the mortgage as a national banking association. 12 U.S.C. § 24. Neither the Trust – however it is named – nor the certificate holders, has the capacity to sue or

8

foreclose. The precise name of the Trust is only a matter between US Bank, the trustee, and the beneficiaries of the trust. Even though Schmeglar argues that the name of the trust is critical, he does not cite authority to show that when the Trust acts under any different name, it constitutes a separate entity that may sue him for the same debt in the future.

## CONCLUSION

For the foregoing reasons, judgment will separately be entered in favor of US Bank and Wells Fargo. Judgment will enter in favor of US Bank because it possesses the original signed Note, endorsed in blank. Accordingly, it is legally entitled to enforce the Note. Wells Fargo, as servicer, is empowered under the PSA to collect payment on behalf of US Bank. Under terms of the PSA, US Bank is trustee of a trust, known as Adjustable Rate Mortgage Trust 2005-5, among other names. The obligations that US Bank owes to the Trust as trustee do not affect or change the party is entitled to payment from Schmeglar. No other entity has or is entitled to collect anything on the Note unless and until the Note is assigned to it.

The court has completed its duty under the plan to determine who is entitled to payment of the mortgage note. The final judgment entered herein this date fully adjudicates the issue reserved in the confirmed plan subject only to possible appeal. The automatic bankruptcy stay has expired by operation of law as a result of the entry of the final Chapter 11 decree. 11 U.S.C. § 362(c)(2)(A); 12-bk42283 Dkt. 201. Accordingly, US Bank is entitled to enforce any remedies it may have under the Note and mortgage in state court unless Schmeglar cures his payment defaults.

Judgment will be entered separately under Rule 58(a), F.R. Civ. P., as incorporated by F.R. Bankr. P. 7058.

ENTER:

Jack B. Schmetterer
United States Bankruptcy Judge

Dated this ___ day of May, 2015